**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**SOUTHEASTERN DIVISION**

---

**TARA WHITLOCK,**

      Plaintiff,

v.                                              Civil Action no.  *3:26- CV- 175*

**NORTH DAKOTA GRAIN INSPECTION,**

      Defendant.

---

**COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION**

(Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)

**JURY TRIAL DEMANDED**

Plaintiff Tara Whitlock, brings this action against Defendant North Dakota Grain Inspection for disability discrimination, failure to provide reasonable accommodation, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and alleges as follows:

## I. JURISDICTION AND VENUE

1. **Federal Question Jurisdiction.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a), as Plaintiff's claims arise under the ADA.

2. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant's principal place of business is located in Fargo, North Dakota, within this District; Defendant's decision-makers who made the employment decisions at issue are located within this District; and the unlawful employment practices alleged herein were made within this District. Although Plaintiff performed her work

remotely from Moorhead, Minnesota, the employment decisions giving rise to this action originated from and were carried out by Defendant's Fargo, North Dakota office.

3. **Exhaustion of Administrative Remedies.** Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in September 2025, Charge No.444-2025-03240 . Plaintiff participated in an EEOC intake interview in February 2026. The EEOC issued a Notice of Right to Sue dated Feb 27th, 2026. This Complaint is filed within 90 days of Plaintiff's receipt of that notice.

## II. PARTIES

4. **Plaintiff.** Plaintiff Tara Whitlock is an individual residing in Moorhead, Minnesota at 1559 34th Ave S. At all times relevant to this action, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4), performing her job duties remotely from Moorhead, Minnesota.

5. **Defendant.** Defendant North Dakota Grain Inspection is *a federal agency organized under the laws of the State of North Dakota*, with its principal place of business located at 4150 98th St S, Fargo, North Dakota 58104.  Defendant employs approximately 200 employees and is an "employer" within the meaning of 42 U.S.C. § 12111(5).

## III. STATEMENT OF FACTS

### A. Plaintiff's Employment and Disability

6. Plaintiff Tara Whitlock was hired by Defendant North Dakota Grain Inspection on or about October 17th, 2024, and held the position of Payroll Specialist.  Plaintiff performed her job duties remotely from her home in Moorhead, Minnesota, with the exception of quarterly on-site safety reviews conducted at Defendant's Fargo, North Dakota office.

7. Throughout her employment, Plaintiff performed her job duties satisfactorily. Her role was one that could be performed entirely remotely, with the exception of quarterly on-site safety reviews.

8. Plaintiff has Myalgic Encephalomyelitis/Chronic Fatigue Syndrome ("ME/CFS") and chronic pain, which are physical impairments that substantially limit one or more major life activities, including but not limited to standing, walking, maintaining energy, and engaging in sustained physical and cognitive exertion.

9. Plaintiff's conditions are recognized disabilities under the ADA, 42 U.S.C. § 12102.

### B. Accommodation Request and Initial Employer Response

10. At the outset of her employment, Plaintiff submitted a medical accommodation letter from her treating physician requesting the following reasonable accommodations: (1) a flexible work schedule; (2) additional time off as needed for medical appointments; (3) the ability to work remotely as needed; (4) a standing desk and walking pad for her workstation; and (5) access to a private space to perform physical therapy ("PT") activities during the workday.

11. Defendant provided Plaintiff with a standing desk in a reasonably timely manner.

12. Defendant failed to provide the walking pad. A walking pad was available — specifically, one belonging to the Vice President of the company — but Defendant never transferred it to Plaintiff's workstation despite having agreed to do so.

13. Defendant failed to provide Plaintiff with a private space in which to conduct her physical therapy activities, as had been requested and medically documented. This failure forced Plaintiff to either forgo prescribed PT activities during the workday or perform them without the privacy and space necessary to do so effectively, exacerbating her condition.

14. Initially, Defendant's management expressed acceptance of Plaintiff's need for flexible scheduling and indicated that working remotely approximately 50% of the time would be permissible.

## C. Defendant's Withdrawal of Accommodations and Discriminatory Treatment

15. Plaintiff's ME/CFS condition worsened unexpectedly during her employment, requiring her to work remotely more frequently than initially anticipated. Despite the fact that Plaintiff's position was fully remote-capable (aside from quarterly safety reviews), Defendant's management became increasingly hostile toward Plaintiff's use of her approved remote work accommodation.

16. Plaintiff's manager explicitly stated that Plaintiff had been "misleading" about her ability to work in-office when she was hired — a characterization that was inaccurate and reflected discriminatory animus toward Plaintiff's disability-related needs.

17. Defendant's manager began scrutinizing Plaintiff's work hours, demanding that Plaintiff work at least 40 hours per week without exception.

18. This pressure intensified even in the period following Plaintiff's surgery. Rather than taking time to recover, Plaintiff continued working due to the hostile and unsupportive environment Defendant had created around her use of medical accommodations. Despite this, her manager continued to pressure her about hours.

19. Prior to her termination, Plaintiff's medical condition required her to take four consecutive days off due to a surgical complication. This absence was medically necessary and directly related to Plaintiff's disability. The four-day absence occurred in close temporal proximity to Plaintiff's termination on May 18, 2025, and constitutes a protected use of medical leave under the ADA.

20. A review of Plaintiff's actual hours demonstrates that she averaged 40 hours per week over the relevant period, and the weeks in which she fell short of that threshold were typically deficient by less than one hour.

21. Defendant's conduct made clear that management was no longer willing to honor the flexible scheduling and remote work accommodations that had been agreed upon and were medically necessary.

## D. Plaintiff's Report to the Vice President and Escalating Retaliation

22. After her manager continued to make hostile and discriminatory comments regarding her use of accommodations, Plaintiff sent a written email to Defendant's Vice President describing the ongoing failure to honor her accommodations and the discriminatory treatment she was experiencing. In that email, Plaintiff noted that she would consider filing a report with the EEOC if the behavior continued.

23. The Vice President responded with a brief email indicating she would follow up. No meaningful follow-up occurred.

24. Following Plaintiff's complaint to the Vice President, Defendant's manager began subjecting Plaintiff to heightened scrutiny of her work performance — scrutiny that had never occurred prior to Plaintiff's protected activity. Plaintiff was required to track and document her daily work activities, and her manager became hypervigilant about reviewing those activity summaries, despite the fact that the activities were largely the same routine tasks Plaintiff had performed since the start of her employment without any prior negative feedback.

## E. Additional Protected Activity: Reporting Wage and Legal Compliance Concerns

25. During her employment, Plaintiff also engaged in protected activity by raising concerns about potential legal violations in the workplace. Among other concerns, Plaintiff identified what she reasonably and in good faith believed to be an unlawful salary pay policy and brought this to her manager's attention.

26. Plaintiff's manager initially dismissed her concern. After Plaintiff persisted, the manager agreed to consult with the company's attorneys. The following day, the manager called Plaintiff, acknowledged that Plaintiff's analysis was correct, apologized, and stated she would rectify the pay issue as it applied to Plaintiff.

27. When Plaintiff inquired about remedying the same issue for other affected employees, her concerns were dismissed.

28. Plaintiff also raised concerns regarding safety statistics, safety reporting practices, and other employment law questions during her employment. These concerns were similarly dismissed or inadequately addressed.

29. Plaintiff's reporting of these potential legal violations constitutes protected activity under applicable law.

## F. EEOC Filings

30. While still employed by Defendant, Plaintiff attempted to file an initial charge of discrimination with the EEOC in or around March 2025. Due to unavailability of scheduling slots in the EEOC's online system, that initial charge did not proceed to a formal interview.

31. Plaintiff filed a formal Charge of Discrimination with the EEOC in September 2025 and participated in an EEOC intake interview in February 2026.

## G. Termination

32. On or about May 18, 2025, Defendant terminated Plaintiff's employment. Defendant characterized the termination as a "layoff" attributable to the economic impact of tariffs on the agricultural sector.

33. Defendant's stated justification is pretextual. At the time of Plaintiff's termination, Defendant's business activity was increasing as the agricultural sector was emerging from its slow season. The economic conditions cited by Defendant do not support a bona fide reduction in force.

34. The termination occurred shortly after Plaintiff's four-day medically necessary absence for a surgical complication, and in close temporal proximity to her September 2025 EEOC charge and her February 2026 EEOC interview.

35. Comparator employees were not terminated under comparable circumstances.

36. The temporal proximity between Plaintiff's protected activities — including her accommodation requests, internal complaints, EEOC filings, and medically necessary absences — and her termination, combined with the escalating pattern of hostility following each protected act, establishes a causal connection between the protected activities and the adverse employment action.

## H. Evidence and Documentation

37. Plaintiff possesses the following documentation relevant to her claims: (1) Microsoft Teams chat messages between Plaintiff and her manager; and (2) email correspondence regarding Plaintiff's accommodation requests and the failure to honor those accommodations. Plaintiff anticipates that additional relevant documents are in Defendant's possession and will be sought through discovery.

## IV. CAUSES OF ACTION

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### 42 U.S.C. § 12112

38. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

39. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102. Her ME/CFS and chronic pain substantially limit one or more major life activities.

40. Defendant is an employer covered by the ADA, employing approximately 200 persons.

41. Defendant discriminated against Plaintiff on the basis of her disability by: (a) subjecting her to disparate and hostile terms and conditions of employment; (b) making stigmatizing statements regarding her use of disability accommodations; (c) fabricating performance concerns as a pretext for adverse action; (d) penalizing her for medically necessary absences; and (e) terminating her employment.

42. Defendant's actions were intentional and taken with reckless disregard for Plaintiff's federally protected rights.

43. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

## COUNT II
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA
### 42 U.S.C. § 12112(b)(5)

44. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

45. Plaintiff is a qualified individual with a disability who, with reasonable accommodation, could perform the essential functions of her position.

46. Plaintiff requested reasonable accommodations including a flexible schedule, remote work capability, additional medical leave time, a standing desk, a walking pad, and a private space for physical therapy.

47. Defendant failed to provide: (a) the walking pad, despite having one available; (b) a private space for Plaintiff to conduct physical therapy; and (c) consistent and good-faith application of flexible scheduling and remote work, ultimately withdrawing those accommodations under pressure.

48. Defendant failed to engage in the good-faith interactive process required by 42 U.S.C. § 12112(b)(5)(A).

49. The requested accommodations would not have imposed an undue hardship on Defendant's business operations, particularly given that Plaintiff's role was fully remote-capable.

50. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff suffered harm including exacerbation of her medical condition, lost wages, and other damages.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADA
### 42 U.S.C. § 12203

51. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

52. Plaintiff engaged in protected activity under the ADA, including: (a) submitting a medical accommodation request; (b) reporting to the Vice President that her accommodations were not being honored and referencing a potential EEOC filing; (c) filing a formal Charge of Discrimination with the EEOC in September 2025; and (d) taking medically necessary leave for a surgical complication.

53. Following each instance of protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including increased performance scrutiny, mandatory activity tracking, hostile comments, withdrawal of accommodations, and ultimately termination.

54. A causal connection exists between Plaintiff's protected activities and Defendant's adverse actions, as demonstrated by the close temporal proximity and escalating pattern of retaliation.

55. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other harm.

## COUNT IV
## RETALIATION FOR REPORTING LEGAL AND WAGE VIOLATIONS
### [N.D. Cent. Code § 34-01-20 (ND Whistleblower) and/or FLSA.

56. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

57. Plaintiff engaged in protected activity by reporting what she reasonably and in good faith believed to be unlawful employment practices, including an unlawful salary pay policy, improper safety reporting, and other legal compliance concerns.

58. Defendant responded to these reports with hostility and, following a pattern of such reports, adverse employment action up to and including termination.

59. As a direct and proximate result of this retaliation, Plaintiff has suffered damages in an amount to be determined at trial.

## V. DAMAGES

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and is entitled to recover:

a.  Back pay, including lost wages and lost benefits, from May 18, **2025,** to the date of judgment;

b.  Front pay or, in the alternative, reinstatement to her former position;

c.  Compensatory damages for emotional distress, pain and suffering, humiliation, and loss of enjoyment of life;

d.  Punitive damages for Defendant's intentional and reckless disregard of Plaintiff's federally protected rights;

e.  Attorneys' fees and costs pursuant to 42 U.S.C. § 12205;

f.  Pre- and post-judgment interest; and

g.  Such other and further relief as this Court deems just and proper.

## VI. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tara Whitlock respectfully prays that this Court:

1.  Enter judgment in favor of Plaintiff on all Counts;

2.  Award Plaintiff back pay, front pay, and all lost employment benefits;

3.  Award Plaintiff compensatory damages for emotional distress and other non-economic harm;

4.  Award Plaintiff punitive damages;

5.  Award Plaintiff reasonable attorneys' fees and litigation costs;

6.  Order Defendant to implement and enforce ADA-compliant accommodation and anti-retaliation policies; and

7.  Grant such other and further relief as this Court deems equitable and just.

Respectfully submitted,

**Tara Whitlock**
Plaintiff*[ Pro Se — OR: Attorney Name, Bar No.]*

*1559 34th Ave S, MOORHEAD, MN  56560*
*2182427402*
*Tara.s.whitlock@gmail.com*

Date: May 26, 202

---

## VERIFICATION

I, Tara Whitlock, declare under penalty of perjury under the laws of the United States of America that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

**Tara Whitlock**
Date: *[DATE]* 5/11/2025